Nathan Brown (State Bar No. 033482)
Brown Patent Law
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
E-mail: Nathan.Brown@BrownPatentLaw.com

*Attorney for Plaintiffs, others listed below.*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Goodell and Kerri Wolski, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Berkshire Hathaway Automotive, Inc.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

1

**Preliminary Statement**

1. Plaintiffs Brian Goodell and Kerri Wolski bring this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Plaintiffs allege that Berkshire Hathaway Automotive, Inc. ("Defendant") made automated calls to their cellphones, as well as those of other class members, without their prior express written consent. In fact, the Defendant has placed telemarketing telephone calls to Plaintiffs and putative class members despite not implementing the policies and procedures required by law prior to making such calls.

3. Plaintiffs and class members never consented to receive these calls. Defendant nonetheless engaged in a nationwide telemarketing campaign designed to sell their products to consumers. Because this telemarketing campaign placed calls to many thousands of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

**Parties**

4. Plaintiff Kerri Wolski is a resident of Mesa, Arizona, in this District.

5. Plaintiff Brian Goodell is a resident of Mesa, Arizona, in this District.

6. Defendant Berkshire Hathaway Automotive, Inc. is a Delaware corporation with its principal place of business in Irving, Texas.

7. Defendant makes telemarketing calls into this District, as it did with the Plaintiffs.

**Jurisdiction & Venue**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiffs' claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiffs and the putative class that are the subject of the litigation were made into this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

**TCPA Background**

10. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq*.

11. Relevant to this action, the TCPA provides private rights of action for two types of telemarketing-related conduct.

12. First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system without the prior express written consent of the called party.

13. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing

messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(8).

14. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(i)(A-B).

15. A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

16. Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

17. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

18. The first regulation to be issued under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

19. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

20. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

21. These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

22. Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

23. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

24. Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

25. Consent is irrelevant to § 64.1200(d).

26. A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

27. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

## Factual Allegations

The Defendant

28. The Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

29. Defendant is one of the largest car dealership groups in America with 85 dealerships and 100 automotive franchises, which makes it one of the 10 largest automotive dealership groups in the U.S.

30. Defendant manages marketing and telemarketing for its dealerships.

Calls to Plaintiff Wolski

31. Plaintiff Wolski is a "person" as defined by 47 U.S.C. § 153(39).

32. Plaintiff Wolski's telephone number, (XXX) XXX-3777, is assigned to a cellular telephone service.

33. Plaintiff Wolski's telephone number, (XXX) XXX-3777, is a residential telephone number and not associated with any business.

34. Plaintiff Wolski purchased two vehicles from the Defendant, the first in 2011 and a second in 2015.

35. However, by 2016 Plaintiff Wolski ended her relationship with the Defendant after they refused to honor a warranty associated with one of her vehicles.

36. Plaintiff Wolski had no contact with the Defendant for two years.

37. Then, starting in approximately August of 2018, Plaintiff Wolski began to receive telephone solicitations from the Defendant regarding promotional offers for new vehicles.

38. Plaintiff Wolski believes she received 3-4 calls a week, starting in August of 2018.

39. The calls continued for a period of approximately seven months, until approximately March of 2019.

40. When Plaintiff Wolski received the calls, she would regularly inform the agent to stop calling her.

41. On several occasions, Plaintiff Wolski would request to speak with a manager to confirm that her do not call requests were being received and processed.

42. However, the calls continued.

43. The calls became so frequent and continuous Plaintiff Wolski's wife contacted the Defendant by phone, e-mail, and online demanding that the calls cease.

44. Eventually, Plaintiff Wolski's wife received a call from a manager for the Defendant who apologized for the continued calls and acknowledged that the calls should not have been made because of the multiple do not call requests.

Calls to the Plaintiff Goodell

45. Plaintiff Goodell is a "person" as defined by 47 U.S.C. § 153(39).

46. Plaintiff Goodell's telephone number, (XXX) XXX-8839, is assigned to a cellular telephone service.

47. Plaintiff Goodell's telephone number, (XXX) XXX-8839, is a residential telephone number and not associated with any business.

48. Plaintiff Goodell purchased a vehicle from the Defendant in approximately March 2017.

49. That was the last transaction that Plaintiff Goodell had with the Defendant.

50. Then, starting in approximately July 2019, Plaintiff Goodell began to receive telephone solicitations from the Defendant regarding promotional offers for new vehicles.

51. Plaintiff Goodell believes he received at least 10 calls.

52. On many of the calls, Plaintiff Goodell asked to no longer receive calls.

53. On one such call, Plaintiff Goodell spoke with a manager asking to have the dealership cease calling him.

54. Plaintiff Goodell called the Defendant to demand the calls cease.

55. However, the calls continued. Eventually, Plaintiff Goodell posted an online review of the dealership in approximately March 2020. Shortly after posting his online review, the calls finally stopped.

## The Defendant's Dialing System

56. The calls to both Plaintiffs were made with an ATDS, as that term is defined by the TCPA.

57. Before the calls would connect there was a distinctive "click and pause" sound, which is associated with a predictive dialing system.

58. Plaintiff Goodell further identified the dialing system as an ATDS based on his extensive call center experience.

59. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

60. On information and belief, the dialing system used by Defendant also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

61. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

62. On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

63. The dialing system can do this by inputting a straightforward computer command.

64. Following that command, the dialing system will sequentially dial numbers.

65. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

66. This would be done without any human intervention or further effort.

67. Plaintiffs have suffered actual injury because of Defendant's telemarketing telephone calls, including, but not limited to:

- Reduced device storage;

- Lost time tending to and responding to the calls;

- Mental energy;

- Invasion of Privacy;

- Nuisance;

- Deprivation of the right to request, receive, and act in accordance with the mandated "do not call" policy to stop further calls.

- Increased risk of all the above.

### Class Action Allegations

68. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

69. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two Classes, defined as follows:

> Since the four years prior to the filing of the Complaint through the date of trial, (1) Plaintiffs and all persons within the United States to whose cellular telephone number (2) Defendant placed a call using (3) substantially similar dialing equipment and/or software used to place telephone calls to Plaintiffs (4) without the prior express written consent of the called party.
>
> ("Dialer Class")
>
> Since the four years prior to the filing of the Complaint through the date of trial (1) Plaintiffs and all persons within the United States to whose telephone number (2) Defendant placed (or had placed on its behalf) two or more telemarketing telephone calls (3) within a 12-month period.
>
> ("Policy Class")

70. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and

Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

71. **Numerosity**: The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable as the type of dialing software used by the Defendant is meant for *en masse* calling.

72. **Ascertainability**: The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

   a. The time period(s) during which Defendant placed its telephone calls;

   b. The telephone numbers to which Defendant placed its telephone calls;

   c. The dates Defendant placed telephone calls to each class member;

   d. The names and addresses of Class members;

   e. The equipment Defendant used to call Class members.

73. **Commonality**: There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

   a. Whether Defendant made telemarketing calls;

   b. Whether Defendant uses an automatic telephone dialing system;

   c. Whether Defendant obtains prior express written consent and/or tracks revocation of such consent;

   d. Whether Defendant maintained a written "do not call" policy;

  e.  Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

  f.  Whether Defendant recorded or honored "do not call" requests;

  g.  Whether Plaintiffs and the Classes were damaged thereby, and the extent of damages for such violations; and

  h.  Whether Defendant should be enjoined from engaging in such conduct in the future.

  74.  **Typicality**: Plaintiffs' claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

  75.  Plaintiffs are a member of and their claims are typical of the because Defendant placed telephone calls to their cellular telephone using an automatic telephone dialing system without her consent.

  76.  Plaintiffs are a member of and their claims are typical of the Policy Class because Defendant placed two or more calls for telemarketing purposes in a one-year period to their telephone number without having the required policies, procedures, and training in place.

  77.  Plaintiffs and all putative Class Members have also necessarily suffered concrete injury, as all Members spent time tending to Defendant's calls, lost space on their devices, had their phone lines tied up, and suffered a nuisance and an invasion of their privacy as they were unable to effectively stop the calls if they wanted to do so, or obtain a "do not call policy" upon which they could rely to stop the calls.

78. With respect to the Policy Class specifically, Defendant's failures to abide by those regulations also increased the risk of harm (such as nuisance and invasion of privacy) to Plaintiffs and those Class Members.

79. **Adequacy**: Plaintiffs have no interests antagonistic to, or in conflict with, the Classes.

80. Plaintiffs will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent themselves and the Classes.

81. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

82. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

83. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

84. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the Dialer Class)

85. Plaintiffs and the proposed Dialer Class incorporate the foregoing allegations as if fully set forth herein.

86. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Policy Class Members' cellular telephone numbers.

87. Defendant did so using an automatic telephone dialing system.

88. Defendant did so without the prior express written consent of Plaintiffs and Dialer Class Members.

89. Plaintiffs and Dialer Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(b)(3), in addition to and separate from any award related to Defendant's failure to maintain policies and procedures for an internal do-not-call list.

90. Plaintiffs and Dialer Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, in addition to and separate from any award related to Defendant's failure to maintain policies and procedures for an internal do-not-call list, because Defendant's violations were knowing and/or willful

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiffs and the Policy Class)**

91. Plaintiffs and the proposed Policy Class incorporate the foregoing allegations as if fully set forth herein.

92. Defendant placed numerous calls for telemarketing purposes to Plaintiffs' and Policy Class Members' telephone numbers.

93. Defendant did so despite not having a written policy pertaining to "do not call" requests.

94. Defendant did so despite not having such a policy available "upon demand."

95. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

96. Defendant did so despite not recording or honoring "do not call" requests.

97. Defendant placed two or more telephone calls to Plaintiffs and Policy Class Members in a 12-month period.

98. Plaintiffs and Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5), in addition to and separate from any award for damages related to Defendant's calls using an automatic telephone dialing system.

99. Plaintiffs and Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call because Defendant's violations were knowing and/or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiffs Mujahid as the representative of the Classes and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b) and § 227(c);

C. An award of injunctive and other equitable relief as necessary to protect the

interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

  D. An award of statutory damages for each violation of 227(b) and (c) and the regulations promulgated thereunder;

  E. An award of treble damages;

  F. An award of reasonable attorneys' fees and costs; and

  G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

**Plaintiffs requests a jury trial as to all claims of the complaint so triable.**

Dated:  August 23, 2020                            Respectfully Submitted,

<u>*/s/ Nathan Brown*</u>

Lynn A. Toops*
Lisa M. La Fornara*
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenandmalad.com

Mary C. Turke*
TURKE & STRAUSS, LLP
613 Williamson Street Suite 201
Madison, WI 53703
Ph: (608) 237-1775
Mary@turkestrauss.com