1  Mary C. Turke, *Admitted Pro Hac Vice*
   TURKE & STRAUSS LLP
2  613 Williamson Street, Suite 201
   Madison, WI 53703
3  Telephone: (608) 237-1775
   mary@turkestrauss.com
4
   Lynn A. Toops, *Pro Hac Vice Pending*
5  Lisa M. La Fornara, *Pro Hac Vice Pending*
   COHEN & MALAD, LLP
6  One Indiana Square
   Suite 1400
7  Indianapolis, IN 46204
   Telephone: (317) 636-6481
8  ltoops@cohenandmalad.com
   llafornara@cohenandmalad.com
9
   [Additional Counsel Appear on Signature Page]
10
   *Attorneys for Plaintiffs*
11
                    **UNITED STATES DISTRICT COURT**
12                   **FOR THE DISTRICT OF ARIZONA**

13

14 | BRIAN GOODELL and KERRI
   | WOLSKI, individually and on behalf of a
15 | class of all persons and entities similarly    Case No. 2:20-cv-01657-JJT
   | situated,
16
   |                Plaintiffs,                     **PLAINTIFFS' RESPONSIVE**
17 |        v.                                      **MEMORANDUM TO DEFENDANT'S**
   |                                                **MOTION TO DISMISS**
18 | BERKSHIRE HATHAWAY
   | AUTOMOTIVE INC.,
19 |
   |                Defendant.
20

21

22      The Court should deny Defendant's Motion to Dismiss as moot: Plaintiffs timely

23 filed an Amended Complaint as of right, pursuant to Fed. R. Civ. P. 15(a). Because

24 Defendant's Motion also seeks sanctions for "Plaintiffs' counsels' disregard for their

25 affirmative obligations under Rule 11," *see* Dkt. 13 at 8, Plaintiffs are compelled to set

26 the record straight.

27      The Court's August 25, 2020, Order (the "Meet and Confer Order") both

28 anticipated and prohibited what Defendant did here—hide the ball, then indignantly

1    threaten Rule 11 sanctions before teeing up an unnecessary Motion to Dismiss. During

2    numerous meet and confer discussions prior to filing its motion, Defendant deliberately

3    did not reveal to Plaintiffs that "Berkshire Hathaway Automotive" (also referred to herein

4    as "BHA") is *not* the trade name for Defendant, Berkshire Hathaway Automotive Inc.

5    Rather another entity, Van Tuyl Group, LLC, is the entity doing business as Berkshire

6    Hathaway Automotive, which engaged in marketing activities on behalf of Defendant's

7    car dealerships. During these meet and confer discussions, Defendant's counsel created

8    and reinforced confusion about the entities by consistently referring to Defendant

9    Berkshire Hathaway Automotive Inc. as "Berkshire Hathaway Automotive" or "BHA"

10   and suggesting the automated calls at issue were exclusively made by individual

11   dealerships. Furthermore, Defendant's counsel had promised to provide documentation

12   supporting its position yet never did. Had Defendant cleared up the confusion rather than

13   leveraging it—by sharing information about the Van Tuyl Group, LLC instead of

14   attaching it to the Rule 12(b) motion—Plaintiffs would have amended their Complaint to

15   add the proper defendant prior to any motion practice.

16        The Court should *not* reward Defendant's gamesmanship with its requested award

17   of fees when Defendant and its counsel failed to comply with the substance of the Meet

18   and Confer Order.

19                    **I.  FACTS RELEVANT TO THE MOTION**

20        On August 23, 2020, Plaintiffs filed their Class Action Complaint against

21   Berkshire Hathaway Automotive, Inc. ("Defendant") alleging Defendant violated the

22   Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by making automated

23   calls to Plaintiffs' cellphones to promote two Phoenix, Arizona car dealerships

24   (Camelback Kia and Showcase Honda) without Plaintiffs' prior express written consent.

25        On September 14, 2020, Defendant's counsel contacted Plaintiffs' counsel to

26   request a one-week extension, until September 28, 2020, to file a responsive pleading,

27   and Plaintiffs agreed. *See* Exhibit A at ¶ 3. Defendant's counsel also stated that Plaintiffs

28   had sued the wrong entity because the dealership entities made the calls. *Id.* at ¶ 4.

1    Defendant's counsel stated that even though Defendant owns approximately 95% of each

2    car dealership, Defendant is a distinct entity with no liability for the offending calls. *Id*. at

3    ¶ 5.  In support of this assertion, Defendant's counsel offered to produce entity

4    information. *Id.*

5         On September 21, 2020, Defendant's counsel again contacted Plaintiffs' counsel

6    to say Defendant was trying to locate relevant dealership-related documents. Exh. A at ¶

7    6, Exh. 1. Meanwhile Defendant's counsel asked for another extension of its deadline to

8    respond to the Complaint. *Id.* On September 23, 2020, Plaintiffs offered Defendant an

9    additional two-week extension to October 8, 2020. *Id.* at *¶ 7*.

10        On October 1, 2020, counsel met and conferred regarding the Complaint

11   allegations. Exh. A at ¶ 8, Exh. 1.  Plaintiffs' counsel explained the basis for asserting

12   Defendant's liability under the TCPA using information that was uncovered during

13   Plaintiffs' pre-suit investigation, including the large number of complaints about

14   telemarketing related to BHA car dealerships across the country. *Id*. Defendant's counsel

15   represented that telemarketing calls were made by a dealership-related business

16   development center while continuing to assert the individual dealerships were the

17   appropriate defendants. *Id.* at ¶ 9. In response, Plaintiffs' counsel asked for call

18   recordings from this center, and Defendant's counsel said he would see if Defendant

19   could produce them. *Id.* ¶ 10. At no time did Defendant's counsel mention the Van Tuyl

20   Group or that BHA was Van Tuyl's fictitious name. *Id.*

21        Defendant never produced any entity records or call records. Exh. A at ¶ 11.

22   Nonetheless, Defendant's counsel again insisted in an email dated October 2, 2020, that

23   Plaintiffs lacked a good faith or factual basis to sue "*Berkshire,*" as "*Berkshire*" made no

24   marketing calls. *Id*. ¶ 12. The October 2, 2020, email reiterated that "*Berkshire Hathaway*

25   *Automotive*" is a holding company that has ownership interests in dealerships and that

26   *Berkshire* did not make calls nor does it contract with third parties to make calls. *Id.*

27   Exh. 1. Notwithstanding their failure to produce entity documents or call records as

28

1    promised, Defendant's counsel asserted that Plaintiffs lacked a "Rule 11 basis" for

2    naming Berkshire:

3
      It strikes me that, as the parties who filed this lawsuit, Mr. Goodell and Ms. Wolski should be able to
4     easily explain why they have sued an entity that never called them.  I don't expect them to
      understand that the Court does not even have jurisdiction over Berkshire (a Texas corporation that
5     never called them), but I would expect that there was some Rule 11 basis for their decision to name
      Berkshire and to allege that Berkshire not only made calls to them, but that Berkshire "engaged in a
6     nationwide telemarketing campaign designed to sell their products to consumers," considering that
      Berkshire (1) never made a telemarking call and (2) does not sell products to consumers.
7

8    *Id.*

9         By email dated October 6, 2020, Plaintiffs' counsel disagreed that "*Berkshire*

10   *Hathaway Automotive ('BHA')*" is a mere holding company that lacked ability to direct

11   third-parties to make the calls. Exh. A at ¶ 13, Exh. 1. Plaintiffs' counsel explained that,

12   based on public records, Plaintiffs believed BHA plays an active role in "marketing,

13   telemarketing and relationship management for various dealerships within its group."

14   Plaintiffs' counsel shared a link to the BHA website, which describes BHA's active role

15   in day-to-day operations of the dealerships. *Id.* Plaintiffs' counsel also pointed out a

16   November 2018 press release that said BHA had contracted with Century Interactive

17   d/b/a Car Wars Own the Phone to provide enterprise-wide CRM, digital marketing and

18   call-tracking for dealerships. Exh. A at ¶ 13, Exh. 1. Lastly, Plaintiffs' counsel referenced

19   the more than one hundred (100) online consumer complaints about telemarketing calls

20   related to BHA's dealerships. *Id.* The consistency of the online complaints suggests a

21   coordinated campaign across all dealerships, spear-headed by BHA. Plaintiffs' counsel

22   again asked that Defendant produce call records as promised. *Id.*

23        Defendant's counsel responded by email dated October 7, 2020 that he "now

24   understood" Plaintiffs' position—while continuing to withhold information about Van

25   Tuyl's role and dodge the request to produce entity and call records. Exh. A at ¶ 14.

26   Likewise, Defendant's counsel persisted that Plaintiffs had insufficient information to sue

27   Defendant, referring to his client as "*Berkshire*" or "*BHA*" rather than Berkshire

28

1   Hathaway Automotive Inc. *Id.* At no time in the parties' discussions did Defendant's

2   counsel explain that Berkshire Hathaway Automotive Inc. is distinct from Berkshire

3   Hathaway Automotive, the trade name for Van Tuyl Group, LLC. *Id*. at ¶ 15.

4          Indeed, the existence of Van Tuyl Group, LLC and its relationship to BHA is not

5   apparent from BHA's website, privacy policy, or press releases. Exh. A at ¶ 16. It was

6   only after Defendant filed its Motion to Dismiss and disclosed the existence and

7   relevance of Van Tuyl Group, LLC that Plaintiffs were able to connect the dots. *Id.* at

8   ¶¶ 16-18. Publicly-available press releases from 2015 state Berkshire Hathaway, Inc.

9   acquired Van Tuyl Group LLC, which was renamed Berkshire Hathaway Automotive.

10  *See* https://www.autonews.com/article/20150310/RETAIL07/150319987/berkshire-hathaway-

11  completes-van-tuyl-acquisition. *Id*. But this information, along with Berkshire Hathaway

12  Automotive's website, which does not disclose that Berkshire Hathaway Automotive is a

13  trade name for Van Tuyl Group, lead Plaintiffs to believe Van Tuyl Group was merged

14  into Berkshire Hathaway Automotive Inc., and Berkshire Hathaway Automotive Inc.'s

15  trade name is BHA. *Id.*

16         On October 8, 2020, Defendant filed its Motion to Dismiss for lack of jurisdiction

17  under Rule 12(b)(1), arguing Plaintiffs failed to establish Article III standing and

18  asserting that Defendant is a holding company that engages in no marketing activities and

19  "to the extent Plaintiffs have any claims at all, they have sued the wrong party." Dkt. 13

20  at 2. Defendant's Motion includes the Court-ordered "Certification of Conferral"

21  affirming that "Counsel for the parties discussed Defendant's intention to file this motion

22  to dismiss, and the substantive legal arguments presented by [Defendant] in this motion."

23  *Id.* at 9.

24         Defendant's Motion is based on the Declaration of Assane Faye, Vice President of

25  Marketing for "*Van Tuyl Group, LLC dba Berkshire Hathaway Automotive ('BHA'),*"

26  revealing for the first time (i) that Berkshire Hathaway Automotive is a trade name for

27  Van Tuyl Group LLC, *not* Berkshire Hathaway Automotive, Inc.; and (ii) that BHA is a

28  wholly-owned subsidiary of Defendant. Dkt. 13. While not explicitly stated, Defendant's

5

1  submission of the Van Tuyl Group declaration implicates Van Tuyl Group dba BHA as

2  the entity that conducts the marketing functions for Defendant's dealerships and makes

3  the automated calls that form the basis for Plaintiffs' Complaint.

4                                    **II.  ARGUMENT**

5  **A.     The Court Should Deny Defendant's Motion to Dismiss As Moot**

6           Under Fed. R. Civ. P 15(a)(1)(B), a party may amend its complaint as of right

7  within 21 days after service of a responsive pleading. *Ramirez v. County of San*

8  *Bernardino*, 806 F.3d 1002 (9th Cir. 2015). Upon the filing of an amended complaint,

9  any pending motion to dismiss the original pleading becomes moot. *See Patterson v.*

10 *Ryan*, 2020 WL 4134980 *2 (D. Ariz. October 13, 2020) (denying a motion to dismiss

11 the original complaint as moot based on the filing of an amended complaint).

12          Here, Defendant filed and served its Motion to Dismiss on October 8, 2020. Dkt. 13.

13 On October 29, 2020, Plaintiffs filed a First Amended Complaint, thereby rendering moot

14 Defendant's Motion to Dismiss, which the Court should deny on that basis.

15 **B.     Defendant Did Not Comply with the Meet and Confer Order**

16          The Court also should deny Defendant's request for fees and costs in filing its

17 now-mooted Motion to Dismiss. The Court's Meet and Confer Order makes clear that

18 motions to dismiss under Rule 12(b) are discouraged if "the defect that would be subject

19 of the motion can be cured by filing an amended pleadings." Dkt. 5; *Hestrom v. Bristol-*

20 *Myers Squibb Company*, 2016 WL 4744177 *1 (D. Ariz. August 16, 2016) (reiterating

21 same). The Meet and Confer Order therefore requires the parties to meet and confer prior

22 to the filing of a motion, to determine whether the motion can be avoided by amendment

23 that could cure a deficient pleading. Dkt. 5. Motions filed without this certification may

24 be stricken on the Court's own motion. *Id. See Rucci v. JP Morgan Chase Bank*, 2014

25 WL 11515629 *1 (D. Ariz. April 17, 2014) (striking Motion to Dismiss that did not

26 comply with Court's Order to meet and confer to discuss whether an amendment could

27 cure a deficient pleading).

28

1    Here, the Court should find Defendant did not comply with the purpose or

2    substance of the Meet and Confer Order. Defendant's certification cites five (5) separate

3    conferences with Plaintiffs' counsel regarding Complaint allegations (made possible by

4    Plaintiffs' willingness to extend Defendant's answer deadline twice). Dkt 13. By

5    Defendant's own admission, Defendant's counsel "understood the position that [Plaintiffs

6    were] taking"—that Plaintiffs were pursuing TCPA claims against an entity that was

7    directing enterprise-wide telemarketing campaigns on the dealerships' behalf. Exh. A.

8    Defendant's Motion to Dismiss and supporting declaration make clear Defendant knew

9    that entity was the Van Tuyl Group.

10    During the meet and confer conferences, Plaintiffs explained their basis for

11    believing the entity with vicarious liability[1] was Defendant, namely (i) information on the

12    BHA website listed enterprise marketing positions and described BHA's involvement in

13    dealership operations; (ii) a press release stated BHA contracts with third-parties like Car

14    Wars to manage phone call data management; and (iii) the fact that hundreds of online

15    consumer complaints are suggesting a coordinated call campaign by BHA. Exh. A at

16    ¶ 13. Despite understanding Plaintiffs' theory of vicarious liability, Defendant's counsel

17    failed to explain BHA is the trade name of Van Tuyl Group, not the Defendant. *Id*. at 14.

18    This information would have allowed Plaintiffs to amend the Complaint to name Van

19

20

21    [1] Under the Federal Communication Commission's (FCC's) 2013 ruling in *Dish Network*, companies that can be held vicariously liable for the TCPA violations because "the seller

22    is in the best position to monitor and police TCPA compliance by third-party telemarketers[.]" *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574,

23    6588 (2013). Allowing a company "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties," according to the FFC, would leave

24    consumers "in many cases without an effective remedy for telemarketing intrusions" particularly "if the telemarketers were judgment proof, unidentifiable, or located outside

25    the United States, as is often the case." *Id*. Companies can be held vicariously liable for TCPA violations under common law agency principles set out in the Restatement (Third)

26    of Agency, including (1) "classical" agency; (2) apparent authority; and (3) ratification. *Id*. at 6586-87. Under Ninth Circuit precedent, the FFC's ruling applies. *See Kristensen v.*

27    *Credit Payment Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018) ("We defer to this construction of the TCPA, as well as the FCC's reliance on the Restatement (Third) of

28    Agency.").

1    Tuyl Group and cure the standing issue Defendant now raises in its Motion to Dismiss.

2    *Id*. at ¶ 19.

3                                **III.  CONCLUSION**

4          The Court should deny Defendant's Motion as moot and deny its straw man request

5    for fees and costs. Sanctions are inappropriate where Defendant withheld information the

6    Meet and Confer Order required it to disclose.

7          DATED this 29th day of October 2020.

8                                            By: s/ *Mary C. Turke*

9                                                Mary C. Turke, *Admitted Pro Hac Vice*
                                                 TURKE & STRAUSS LLP
10                                               613 Williamson Street, Suite 201
                                                 Madison, WI 53703
11                                               Telephone: (608) 237-1775
                                                 Facsimile:  (608) 509-4423
12                                               mary@turkestrauss.com

13

14                                               Lynn A. Toops, *Pro Hac Vice Pending*
                                                 Lisa M. La Fornara, *Pro Hac Vice Pending*
15                                               COHEN & MALAD, LLP
                                                 One Indiana Square
16                                               Suite 1400
                                                 Indianapolis, IN 46204
17                                               Telephone: (317) 636-6481
                                                 ltoops@cohenandmalad.com
18                                               llafornara@cohenandmalad.com

19                                               Nathan Brown (State Bar No. 033482)
20                                               BROWN PATENT LAW
                                                 15100 N 78th Way, Suite 203
21                                               Scottsdale, AZ 85260
                                                 Telephone: (602) 529-3474
22                                               Nathan.Brown@BrownPatentLaw.com

23                                           *Attorneys for Plaintiffs*

24

25

26

27

28

                                             8

1

## **CERTIFICATE OF SERVICE**

2

I, Mary C. Turke, hereby certify that on October 29, 2020, I electronically field the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the following:

5

Darrell E. Davis

6

Zachary R. Fort

CLARK HILL PLC – SCOTTSDALE, AZ

7

14850 N Scottsdale Rd., Suite 500

8

Scottsdale, AZ 85254

Telephone: (480) 684-1100

9

ddavis@clarkhill.com

10

zfort@clarkhill.com

11

DATED this 29th day of October 2020.

12

By: s/ *Mary C. Turke*

13

Mary C. Turke, *Admitted Pro Hac Vice*

TURKE & STRAUSS LLP

14

613 Williamson Street, Suite 201

Madison, WI 53703

15

Telephone: (608) 237-1775

16

Facsimile:  (608) 509-4423

mary@turkestrauss.com

17

18

*Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28