**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Goodell, *et al.*, | No. CV-20-01657-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Van Tuyl Group LLC, | |
| Defendant. | |

At issue is Defendant Van Tuyl Group, LLC's Motion to Dismiss (Doc. 23, MTD), to which Plaintiffs Brian Goodell and Kerri Wolski filed a Response (Doc. 24, Resp.), and Defendant filed a Reply (Doc. 31). Plaintiffs also filed a Sur-Reply (Doc. 36), to which Defendant filed a Response (Doc. 37). The Court additionally considered Plaintiffs' Notice of Supplemental Authority (Doc. 38).

**I.    BACKGROUND**

Plaintiffs are two individuals who received calls from two different car dealerships (collectively, the "Car Dealerships") soliciting their business. Ms. Wolski purchased two vehicles from Chv Motors, LLC dba Camelback Kia in Phoenix, Arizona (the "Camelback Dealership") in 2011 and 2015. (Doc. 16, First Amended Complaint ("FAC") ¶ 37.) In August 2018, she received four calls from the Camelback Dealership soliciting business and offering promotions for new vehicles. (FAC ¶¶ 43, 45.) At the beginning of each call, Ms. Wolski heard a distinctive "click and pause" sound. (FAC ¶ 44.) Despite Ms. Wolski's

consistent requests for the calls to stop, the Camelback Dealership continued to call through March 2019. (FAC ¶ 46.)

Similarly, Mr. Goodell purchased a vehicle from Showcase Honda, LLC dba Showcase Honda in Phoenix, Arizona (the "Showcase Dealership") in March 2017. (FAC ¶ 55.) Starting in approximately July 2019, Mr. Goodell received 10 calls from the Showcase Dealership regarding promotional offers. (FAC ¶¶ 60-61.) Mr. Goodell also noticed a distinctive "click and pause" sound. (FAC ¶ 62.) Based on his extensive call center experience, he identified the sound as both a predictive dialing system and an Automatic Telephone Dialing System ("ATDS") (FAC ¶¶ 63-64.) Mr. Goodell requested that the calls stop but was initially ignored. The calls finally stopped in March 2020 after Mr. Goodell posted a negative review. (FAC ¶¶ 67-69.)

Plaintiffs filed their initial lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 against Berkshire Hathaway Automotive, Inc. ("BHAI") (Doc. 1, Complaint ("Compl.")). BHAI holds an ownership interest in 85 car dealerships throughout the United States, including the Car Dealerships who allegedly initiated the calls at issue. (Doc. 13-1, First Declaration of Assane Faye ("First Faye Decl.") ¶ 7.) BHAI moved to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Plaintiffs did not have standing. BHAI provided Assane Faye's declaration as evidence in support of its jurisdictional arguments. Mr. Faye is the Vice President of Marketing for Van Tuyl Group, LLC dba Berkshire Hathaway Automotive ("BHA"), which is a wholly owned subsidiary of BHAI. (First Faye Decl. ¶¶ 1-2.) BHAI asserted that it was merely a holding company without employees (First Faye Decl. ¶¶ 6-8.)

Plaintiffs subsequently filed the operative Complaint against Van Tuyl Group (hereinafter "BHA") alleging that it was vicariously liable under §§ 227(b) & 227(c) of the TCPA for the Car Dealerships' repeated calls (Doc. 16, First Amended Complaint ("FAC")). Plaintiffs allege that Defendant maintains a Business Development Center from which the Car Dealerships initiate marketing calls (FAC ¶ 77.) On or around November 19, 2018, Defendant contracted with Century Interactive dba Car Wars Own the Phone ("Car

Wars") for customer relations management ("CRM") software, digital marketing, and call tracking services that Defendant provided to the Car Dealerships. (FAC ¶ 78.) Through the CRM, Defendant directs and controls the Car Dealerships' telemarketing campaigns to consumers, including providing the Car Dealerships with telephone numbers to call. (FAC ¶¶ 78, 90.) Plaintiffs further allege that Defendant received profits based on the illegals calls from the Car Dealerships. (FAC ¶ 86.)

BHA moved to dismiss the case under Rule 12(b)(1) arguing that Plaintiffs lack standing. In support of the Motion to Dismiss, BHA filed Mr. Faye's second declaration. (Doc. 23-1, Second Declaration of Assane Faye ("Second Faye Decl.")). Plaintiffs argue that they have standing but in the alternative, request that the Court grant leave for jurisdictional discovery.

## II.     LEGAL STANDARD

To bring a judicable lawsuit into Federal Court, Article III of the Constitution requires that one have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, a plaintiff must show that he suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In the complaint, the plaintiff must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Accordingly, courts should dismiss a plaintiff's complaint if he has failed to provide facts sufficient to establish standing. *See, e.g., Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) may facially attack the existence of subject matter jurisdiction or may challenge the truth of the alleged facts that would confer subject matter jurisdiction on the court. *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Courts are permitted

to consider evidence to decide a factual attack on subject matter jurisdiction. *Thornhill*, 594 F.2d at 733. The party asserting jurisdiction has the burden of showing that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Where a claimant lacks standing, the court must dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Ervine v. Desert View Reg. Med. Ctr. Holdings, LLC,* 753 F.3d 862, 868 (9th Cir. 2014).

### III.   ANALYSIS

#### A.   Standing

Defendant mounts a factual attack on the second and third prongs of the Article III inquiry – whether Plaintiffs' claims are traceable to or redressable by Defendant. Defendant argues that BHA is merely a management consulting company that provides consulting services to the individual automotive dealerships and thus Plaintiffs sued the wrong party. (MTD at 2.) Mr. Faye's Second Declaration refutes many of Plaintiff's allegations regarding BHA's corporate structure, its influence on the Car Dealerships, as well as other allegations forming the basis of Plaintiffs' claim for vicarious liability.

Plaintiffs argue that Defendant's factual attack on subject matter jurisdiction is procedurally improper because the merits of their TCPA claim and the question of jurisdiction are intertwined. (Resp. at 12.) "Normally, the question of jurisdiction and the merits of an action will be considered intertwined where ... a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983). However, courts do not limit their inquiry to cases where interpretation of a federal statute is at issue. *See, e.g., Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

Here, questions regarding Defendant's potential vicarious liability under the TCPA are central to determining both the Court's subject matter jurisdiction and Defendant's liability. (MTD at 12-13; Resp. at 15-17.) Defendant, however, argues that only the question of whether the Car Dealerships' alleged calls violated the TCPA goes towards the merits and thus the question of Defendant's vicarious liability solely implicates the Court's

subject-matter jurisdiction. (Reply at 7.) The Court disagrees. It is impossible to separate the issue of whether Defendant violated the TCPA due to the Car Dealerships' calls from whether Defendant is vicariously liable. *See McGovert v. United States*, 2004 WL 1729953, at *2 (N.D. Cal. July 14, 2004) (holding jurisdictional issue intertwined with merits where both depended on whether individual was acting within the scope of his employment at time of incident). Defendant's arguments regarding vicarious liability demonstrate the overlap. *See* Reply at 11 n. 3 (arguing Plaintiffs do not have standing because they "have not offered a single decision, whether from a court or the FCC, where a defendant entity has been found vicariously liable under the TCPA for a third-party's telemarketing where the defendant entity was neither a seller of the marketed product nor an owner/franchisor."). Because determining whether Defendant is vicariously liable under the TCPA goes directly to the merits of the case, the Court finds that subject matter jurisdiction and the merits are intertwined.

However, contrary to Plaintiffs' contentions, the Court's finding does not automatically warrant denial of Defendant's Motion. Rather, Plaintiffs must produce evidence showing that there are disputed factual issues regarding Defendant's vicarious liability. *See Roberts v. Corrothers*, 812 F. 2d 1173, 1177 (9th Cir. 1987) (explaining that if there are no issues of fact, the court may dismiss for lack of jurisdiction even though jurisdictional and merits issues are intertwined); *Sun Valley Gasoline, Inc.*, 711 F.2d at 139 ("jurisdictional finding of *genuinely disputed facts* is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action.") (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)) (emphasis added). To determine the existence of factual disputes, the district court should "employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Rosales*, 824 F.2d at 803; *see Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1195–96 (N.D. Cal. 2019) (where merits and subject matter jurisdiction

are intertwined, plaintiff must submit "competing evidence to create a dispute of material fact warranting [the court's] deferral").

Plaintiffs rely on *Agne v. Papa Johns Int'l*, 286 F.R.D. 559, 564 (W.D. Wash. 2012) to argue that the overlap of the merits and subject-matter jurisdiction alone warrants denial, but that reliance is misplaced. (Resp. at 13-14.) In *Papa John*, the plaintiff sued Papa John's International, Inc., the franchisor, under a theory of vicarious liability for violating the TCPA. In denying Defendant's motion, the court expressly cited evidence that representatives of the franchisor encouraged franchisees to work with a third-party marketing company that sent unsolicited texts to plaintiffs, which created an issue of fact. *Id.* ("The Court will not resolve a disputed issue of fact at this preliminary point in the litigation under the guise of deciding whether plaintiff has standing."). Plaintiffs additionally point to *Doup v. Van Tuyl Group, LLC*, No. CV 20-02742-X (N.D. Tex. Apr. 26, 2021), which is a separate class action against Defendant in which the plaintiff also claims Defendant is vicariously liable for a BHAI car dealership's telemarketing communications. Defendant moved to dismiss for lack of standing but the court held that it was inappropriate to determine subject-matter jurisdiction where issues of fact were central to both subject matter jurisdiction and the claim on the merits (Doc. 38-1 at 6.) Relying on Fifth Circuit precedent, the court appeared to hold that plaintiff need not produce evidence to show such issues of fact. (Doc. 38-1 at 6.) The Court declines to adopt this reasoning. Ninth Circuit law is clear that a plaintiff must produce evidence to create a disputed issue of fact. *Rosales*, 824 F.2d at 803; *Williams*, 498 F. Supp. at 1195–96.

Having reviewed the evidence produced by both parties, the Court finds that Plaintiffs have failed to create a disputed issue of material fact regarding Defendant's vicarious liability. Companies may be vicariously liable under theories of (1) actual or "classical" agency, (2) apparent authority, and (3) ratification. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6586-87 (2013). The FCC has ruled that actions under the TCPA shall "incorporate federal common law agency principles of vicarious liability." *Id.* at 6584.

Mr. Faye's declaration refutes the majority of Plaintiffs' allegations that are central to its claim for vicarious liability. Specifically, Mr. Faye avers that BHA has no ownership interest in the Car Dealerships, does not maintain a "Business Development Center" from which marketing calls are made on behalf of Car Dealerships, and does not provide or facilitate the use of an ATDS for any of its dealership clients. (Doc. 23-1, Second Declaration of Assane Faye ("Second Faye Decl." ¶¶ 8, 15-16.) Moreover, BHA does not provide the CRM software used by dealership clients nor does it provide them with telephone numbers to use for telemarketing purposes. (Second Faye Decl. ¶¶ 18-19.) While Plaintiffs produce evidence in response, it fails to controvert the evidence proffered in Mr. Faye's declaration. Therefore, the Court finds that based on the current evidence before it, Plaintiffs do not have standing to assert their TCPA claims against Defendant.

### B. Jurisdictional Discovery

Alternatively, Plaintiffs request that the Court grant them leave to conduct limited jurisdictional discovery. Specifically, Plaintiffs propose: 1) BHA answer jurisdictional interrogatories and requests for production (Doc. 24-1); 2) BHA present Mr. Faye for deposition; and 3) third parties Car Wars, Camelback Kia, and Showcase Honda answer requests for production (Docs. 24-2, 24-3). (Resp. at 19.) Courts have "broad discretion" to grant requests for jurisdictional discovery, which should be permitted where "a more satisfactory showing of the facts is necessary." *City of Tombstone v. United States*, No. CV 11-845-TUC-FRZ, 2012 WL 12841240, at *1 (D. Ariz. Sept. 21, 2012).

Defendant argues that discovery would be futile because neither it nor any third party sells or markets VTG products to consumers.[1] (Reply at 11.) But Plaintiffs do not allege vicarious liability on such basis. Rather, Plaintiffs allege that BHA has an interest in the Car Dealerships and is vicariously liable for coordinating and directing the Car Dealerships' telemarketing campaigns for its benefit. (FAC ¶ 79; Resp. at 5, 12.)

---

[1] To the extent Defendant argues that it does not qualify as a seller under the TCPA because it does not sell VTG or BHA branded goods, the Court notes that this is not a requirement under the TCPA. See 47 C.F.R. §§ 64.1200(f)(10) (the FCC defines "seller" as "the person or entity on whose behalf a [telemarketing] call or message is initiated."

While Plaintiffs' fell short of creating an issue of fact as to vicarious liability, they proffered sufficient evidence and allegations to show jurisdictional discovery would not be futile. Defendant and the Car Dealerships are sister entities, which are owned or partially owned by BHAI. (First Faye Decl. ¶¶ 2, 7.) The Car Dealerships' individual websites include a link to Defendant's website, which in turn lists the Car Dealerships within Defendant's automotive group.[2] (FAC ¶¶ 39, 57.) The Car Dealerships also have the same mailing address as Defendant and their listed phone number is a direct line to Defendant's offices. (FAC ¶¶ 40, 58.) BHA's website advertises that it provides dealerships with sales "training, mentoring, and coaching," including selling by telephone. (Doc. 25-11 at 9-10.) Finally, Mr. Faye's Declaration did not refute that BHA encouraged the Car Dealerships to use a common type of customer relations management ("CRM") software called "Car Wars" or that it provided the Car Dealerships phone numbers to call while utilizing the Car Wars CRM (FAC ¶¶ 78-79, 88-90; Resp. at 7.)

It would be premature to find for Defendant based on Mr. Faye's declaration without providing Plaintiffs an opportunity to conduct discovery. *See Foster v. Essex Property, Inc.*, 2017 WL 264390, at *3 (N.D. Cal. Jan. 20, 2017) (explaining that plaintiff could have requested leave to conduct discovery in order to counter defendant's declarations disputing Plaintiff's standing); *Lopez v. Scully*, 2019 WL 2902696, at *3 (C.D. Cal. May 13, 2019) (declining to dismiss Plaintiff's complaint for lack of standing where merits and jurisdictional questions were intertwined and plaintiff had not yet had the opportunity to engage in discovery and develop evidence sufficient to rebut defendant's evidence). However, the Court finds Plaintiffs' proposed discovery requests overbroad. Accordingly, the Court will permit limited discovery as set forth below.

### 1.     Mr. Faye's Deposition

The Court will permit Plaintiffs to conduct Mr. Faye's deposition, which shall be tailored to the contents of his Declarations filed in this matter.

---

[2] https://www.showcasehonda.com/
https://www.berkshirehathawayautomotive.com/dealership/showcase-honda.htm
https://www.camelbackkia.com/
https://www.berkshirehathawayautomotive.com/dealership/camelback-kia.htm

## 2. BHA Interrogatories

The Court will permit Plaintiffs to serve Interrogatories 1-3 and 5-7 on BHA Doc. 24-1). Regarding Interrogatory 2, "Company" shall refer to employees of Van Tuyl Group dba BHA but will not include employees of the Car Dealerships who allegedly called the Plaintiffs. The Court further finds that Interrogatory 4 is overbroad.

Interrogatory 4 states:

> If you contend that the Plaintiffs provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

(Doc. 24-1 at 9.) This Interrogatory is premature and unrelated to whether Defendant directed or encouraged the Car Dealerships to engage in telemarketing.

## 3. BHA Requests for Production

The Court will allow Plaintiffs to serve Requests 1-3 and 6-11. However, Requests 4-5 and 12 are overbroad and outside of the scope of jurisdictional discovery. Request 4 states:

> All documents relating to the failure, alleged failure, or possible failure by any automobile dealership(s) that contacted the Plaintiffs to comply with any agreements, contracts, statements of work, policies or other instruction(s) related to telemarketing.

(Doc. 24-1 at 10.) This Request does not seek evidence to support allegations regarding Defendant's direction or encouragement of the Car Dealerships' telemarketing campaign. Plaintiffs chose not to sue the Car Dealerships and may not use jurisdictional discovery to obtain such information.

Request 5 asks for:

> All documents relating to complaints concerning telemarketing, including, but not limited to, lists or databases containing complaints and metadata about them, and information identifying the complainants. This request includes any complaints to you by mail, email, live call, IVR, SMS, web form, social media, FCC, FTC, CFPB, state attorney general, BBB or any other source.

(Doc. 24-1 at 10.) Again, this request is not tailored the relevant issue of whether Defendant influenced or otherwise played a role in the Car Dealerships' alleged telemarketing.

Finally, Request 12 seeks:

> All documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force."

It proceeds to request information on a number of specific policies such as "when and how calls would be placed (e.g., the vendor, equipment, computer system, or other program, etc.). (Doc. 24-1 at 12.) Although related to the case's merits, this request is tangential to Defendant's relationship with the Car Dealerships and thus overbroad.

### 4. Subpoena to Car Wars

The Court will not allow Plaintiffs to subpoena third party Car Wars. Including Car Wars impermissibly broadens the scope of the jurisdictional discovery. Plaintiffs can obtain any relevant Car Wars information through Defendant or the third-party Car Dealerships.

### 5. Car Dealerships Requests for Production

The Court will permit Plaintiffs to serve Requests 2-4 and 6-8 on the third-party Car Dealerships. However, Requests 1 and 5 are overbroad. Request 1 seeks, "All documents related to Plaintiffs." Again, Plaintiffs chose not to include the Car Dealerships as Defendants. Requesting all information related to Plaintiffs from them is inappropriate where the limited purpose of jurisdictional discovery is to glean more information on the Car Dealerships' relationship with Defendant.

Request 5 asks for, "…all documents relating to complaints or do-not-call requests concerning telemarketing, including, but not limited to, Van Tuyl's knowledge of the complaints." This request is overbroad. Instead, Plaintiffs may request "all documents relating to Van Tuyl's knowledge of complaints or do-not-call requests concerning telemarketing."

**IT IS THEREFORE ORDERED** denying Defendant's Motion to Dismiss (Doc. 23) without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs shall conduct limited discovery in accordance with this Order. Discovery shall be completed by December 22, 2021. Within 30 days of the close of jurisdictional discovery, Defendant may file another motion to dismiss, which shall address the issue of whether Plaintiffs have proffered sufficient evidence to create an issue of material fact as to Defendant's vicarious liability under the TCPA. Plaintiffs may file a response with the benefit of the focused jurisdictional discovery and Defendant may file a reply in accordance with LRCiv 56.1(d).

Dated this 22nd day of September, 2021.

Honorable John J. Tuchi
United States District Judge