**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Goodell, *et al.*, | No. CV-20-01657-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| BH Automotive, LLC, *et al.* | |
| Defendants. | |

At issue is the Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 55, "MTD") filed by Defendant BH Automotive, LLC ("BHA"), to which Plaintiffs filed a Response in opposition (Doc. 60, "Resp.," unredacted version under seal)[1] and in support of which BHA filed a Reply (Doc. 70). The Court finds this matter appropriate for disposition without oral argument, *see* LRCiv 7.2(f), which none of the parties have requested in any event. Having considered the arguments and evidence presented by the parties, the Court grants BHA's Motion to Dismiss for the reasons set forth below.

**I.     BACKGROUND**

The instant Motion to Dismiss follows the Court's Order of September 22, 2021 (Doc. 41, "MTD Order"), in which the Court denied without prejudice BHA's prior motion to dismiss challenging the Court's subject-matter jurisdiction over the claim against BHA.

---

[1] Plaintiffs lodged a redacted version of their Response and accompanying exhibits, which the Court ordered filed on the public docket (Doc. 63). Because it refrains from referencing or discussing information under seal, the Court files this Order on the public docket.

The Court authorized Plaintiffs to conduct limited jurisdictional discovery and permitted BHA thereafter to file another motion to dismiss for lack of subject-matter jurisdiction.

The Court described the nature of Plaintiffs' claim and the procedural history of the case up to that point in its prior MTD Order. In a nutshell, Plaintiffs seek relief under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of themselves and a putative class of similarly situated persons and entities, for repeated, unsolicited calls from car dealerships promoting their vehicles. Plaintiff Wolski alleges that starting in August 2018, she received three or four such calls from Chv Motors, LLC dba Camelback Kia, from which she had previously purchased two vehicles in 2011 and 2015. Plaintiff Goodell alleges that starting in approximately July 2019, he received at least ten such calls from Showcase Honda, LLC dba Showcase Honda, from which he had purchased a vehicle in 2017. Both dealerships are located in Phoenix, Arizona.

Plaintiffs allege that their experiences are representative of a pattern of unlawful calls made by car dealerships associated with Berkshire Hathaway Automotive, an automotive group based in Irving, Texas. Plaintiffs initially named as defendant Berkshire Hathaway Automotive, Inc. ("BHAI"), a holding company with an ownership interest in 85 car dealerships throughout the United States, including the two dealerships that placed the offending calls to Plaintiffs. (Doc. 13-1, First Declaration of Assane Faye ("First Faye Decl.") ¶¶ 6, 7.) After BHAI moved to dismiss the Complaint for lack of subject-matter jurisdiction, Plaintiffs filed a First Amended Complaint naming BHA as defendant in its place (Doc. 16, "FAC").[2] BHA is a Delaware limited liability company and wholly owned subsidiary of BHAI. (First Faye Decl. ¶¶ 1–2.) Plaintiffs allege that BHA is vicariously liable for the car dealerships' offending calls under the TCPA.

BHA then brought its own motion to dismiss, arguing Plaintiffs lack standing to assert a TCPA claim against BHA and the Court therefore lacks subject-matter jurisdiction over the claim. In its prior Order, the Court agreed and found, based on the evidence then

---

[2] The FAC specifically named as defendant Van Tuyl Group, LLC, dba Berkshire Hathaway Automotive. In the interim between the filing of the FAC and the operative Second Amended Complaint, Van Tuyl Group, LLC changed its legal name to BH Automotive, LLC. (*See* MTD at 2 n.1.) The Court refers to the entity as "BHA."

before it, that Plaintiffs did not have standing to assert a TCPA claim against BHA. (MTD Order at 4–7.) The Court declined to dismiss the FAC outright, however, and exercised its discretion to allow Plaintiffs jurisdictional discovery on the issue. (MTD Order at 7–10.)

After several extensions of the deadline for completion of jurisdictional discovery, Plaintiffs filed the operative Second Amended Complaint (Doc. 49, "SAC"). The SAC names as defendants not only BHA, but also the two car dealerships that placed the offending calls, Chv Motors, LLC, and Showcase Honda, LLC (collectively, the "Car Dealerships"). Among other changes, the SAC also adds new allegations pertaining to BHA's vicarious liability under the TCPA. (*See* SAC ¶¶ 79–103.) The Car Dealerships timely filed Answers to the SAC. (Docs. 56 and 57.) BHA filed the instant Motion to Dismiss. BHA maintains that even after jurisdictional discovery, Plaintiffs fail to produce evidence to support their theory of vicarious liability and therefore lack standing to sue BHA, depriving this Court of subject-matter jurisdiction over the claim against BHA and requiring dismissal of the same under Federal Rule of Civil Procedure 12(b)(1).

## II. LEGAL STANDARD

The legal standard applicable to BHA's Motion to Dismiss remains the same. To bring a judicable lawsuit into Federal Court, Article III requires that one have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, a plaintiff must show that he or she suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In the complaint, the plaintiff must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Accordingly, courts should dismiss a plaintiff's complaint if he or she has failed to provide facts sufficient to establish standing. *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).

A motion to dismiss for lack of subject-matter jurisdiction brought pursuant to Rule 12(b)(1) may facially attack the existence of subject-matter jurisdiction or may challenge the truth of the alleged facts that would confer subject-matter jurisdiction on the court. *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Courts are permitted to consider evidence to decide a factual attack on subject-matter jurisdiction. *Thornhill*, 594 F.2d at 733. The party asserting jurisdiction has the burden of showing that the court has subject-matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Where a claimant lacks standing, the court must dismiss the action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *Ervine v. Desert View Reg. Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014).

**III.    ANALYSIS**

As before, BHA mounts a factual attack under the second and third prongs of the Article III inquiry, arguing Plaintiffs' injuries are neither traceable to, nor redressable by, BHA. BHA asserts—and Plaintiffs do not dispute—that this inquiry turns on whether BHA is vicariously liable under the TCPA. If it is not, then Plaintiffs cannot establish the requisite "causal connection between the injury and the conduct complained of—the injury [is not] fairly traceable to the challenged action of the defendant, . . . [but] the result of the independent action of some third party . . . ." *Lujan*, 504 U.S. at 560 (cleaned up and citation omitted).[3] Likewise, it would be doubtful Plaintiffs could show that a favorable decision against BHA would redress their injuries if BHA is not responsible for them in the first place. *See M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

The parties having litigated the proper defendant(s) in this matter for the better part of two years, the question now before the Court is a narrow one. The Court already found the issue of BHA's vicarious liability central to, and intertwined with, the Court's subject-

---

[3] Here, the third parties alleged to have made the offending calls—the Dealership Defendants—are parties to this lawsuit. Nonetheless, for Plaintiff's claim against BHA to survive, Plaintiffs must establish they have standing to sue BHA. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068–69 (N.D. Cal. 2015) ("[T]o hold each defendant in the case, there must be at least one named plaintiff with standing to sue said defendant.")

- 4 -

matter jurisdiction. (MTD Order at 4–5.) Thus, to survive BHA's Motion to Dismiss, Plaintiffs have the burden to produce evidence showing there are material factual disputes as to BHA's vicarious liability. *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) (holding that to determine the existence of factual disputes, the district court should "employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."). Reviewing the evidence then before it, the Court previously found Plaintiffs failed to create a disputed issue of material fact regarding BHA's vicarious liability. (MTD Order at 6–7.) The question now is whether Plaintiffs have since presented sufficient evidence to meet their burden.

A defendant may be held vicariously liable for violations of the TCPA where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party telemarketer who made the offending calls. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–89 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016). Relying on the Restatement (Third) of Agency and deferring to the Federal Communications Commission's interpretation of the statute, the Ninth Circuit has held a defendant may be vicariously liable under the TCPA based on theories of (1) actual authority or "classical" agency; (2) apparent authority; or (3) ratification. *Id.*; *see In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013). Plaintiffs advance arguments under each of these three theories, which the Court considers in turn.

### A. Actual Authority

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (3d) of Agency § 1.01. As an initial matter, BHA makes much of the limiting terms of its Consulting Agreements with the Car Dealerships, which define each as "an independent contractor and not as an agent or employee of the other." (MTD, Ex. A at 3; Ex. B at 17.) However, the Ninth Circuit has held the parties' definition

of their relationship is not controlling. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) ("[I]t is not dispositive, as [defendant] argues, that the agreements between [defendant and the third parties] define their relationships as independent contractors."), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019). Rather, the question of "whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship," *id.*, focusing on "the interaction between the parties rather than their respective identities." *Gomez*, 768 F.3d at 878.

Given the contractual arrangement between BHA and the Car Dealerships is not one of principal-agent, however, Plaintiffs must point to other facts demonstrating that the dealerships nonetheless have express or implied authority to act on behalf of BHA and that BHA has a right to control the dealerships' actions. *See* Restatement § 1.01 cmt. c. Moreover, to establish BHA's vicarious liability under an actual authority theory, Plaintiffs "must do more than establish an agency relationship. They must also establish actual authority to place the unlawful calls." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). "Actual authority is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do." *Id.* (citation and quotation marks omitted).

Plaintiffs have not created a genuine dispute as to whether the Car Dealerships made the offending calls with BHA's actual authority. As noted, the Consulting Agreements do not authorize the Car Dealerships to place calls on behalf of BHA, which styles itself a management consultant. The evidence suggests the Car Dealerships placed the offending calls on their own behalf—to sell their own vehicles—or, arguably, on behalf of BHAI, which is majority owner of both the dealerships and BHA. (MTD, Ex. C, Third Declaration of Assane Faye ("Third Faye Decl.") ¶ 9.) While Plaintiffs' evidence shows there is a great deal of overlap between the various entities within BHAI's automotive group—including shared management staff, phone numbers, a mailing address in Texas, and email-address domains—Plaintiffs produce no evidence to substantiate their allegation that BHA has an ownership interest in the Car Dealerships. BHA has produced evidence it does not. (*Id.*

¶¶ 8, 10.) That BHA may benefit from the Car Dealerships' telemarketing through consulting fees, profit-sharing, or their shared corporate parent does not show that BHA authorized the Car Dealerships to make the calls as BHA's representative or that the Car Dealerships were otherwise acting on BHA's behalf when they made the calls.

Nor have Plaintiffs shown BHA has a right to control the Car Dealerships' telemarketing. The Consulting Agreements expressly disclaim "joint operational control" between the entities. (MTD, Ex. A at 3; Ex. B at 17.) The agreements provide that each Car Dealership "at all times retains complete control over the Dealership Business . . . [and] may reject, overrule, amend, set aside, or ignore any advice or services provided by [BHA]." (*Id.*) The agreements provide that each Car Dealership "retains responsibility for all Dealership Business matters, including, but not limited to, its legal compliance and all other matters arising out of its business operations." (*Id.*) BHA's Vice President of Marketing, Assane Faye, confirmed BHA has no authority to control the Car Dealerships' telemarketing activities. (Third Faye Decl. ¶¶ 10–14; Reply Ex. A, Deposition of Assane Faye ("Faye Dep.") at 178:25–179:6.) Plaintiffs produce no evidence showing the entities have interacted in a manner inconsistent with the Consulting Agreements since their execution. While BHA provides detailed instructions, analysis, benchmarks, and training pertaining to telemarketing, Mr. Faye testified that BHA's non-binding recommendations are just that. (*E.g.*, Faye Dep. at 161:2–10, 205:19–206:5.) Plaintiffs have not produced evidence to dispute that the Car Dealerships retain the right to reject BHA's recommendations.

Likewise, although BHA both facilitates and accesses the customer-relationship management ("CRM") system used by the Car Dealerships in their telemarketing activities, Plaintiffs do not demonstrate this gives BHA a right to control the dealerships' telemarketing notwithstanding the express disclaimer of such right. Analogizing to the FCC's analysis in *Dish Network*, Plaintiffs allege that through the CRM, BHA permits the Car Dealerships to "access . . . information and systems that normally would be within the seller's exclusive control." (SAC ¶ 100.) *See* 28 F.C.C. Rcd. at 6592. But the examples

given in *Dish Network*—"information regarding the nature and pricing of the seller's products and services or the seller's customer information"—show the analogy is inapposite here, where the Car Dealerships sell their own products. 28 F.C.C. Rcd. at 6592.

Plaintiffs point to *Gomez*, where the Ninth Circuit rejected the argument that a marketing consultant could not be held vicariously liable for outsourcing transmission of unsolicited texts on behalf of its client, the United States Navy. 768 F.3d at 878–79. In that case, the Navy hired a marketing consultant to develop and execute a recruiting campaign that included text messages, which were ultimately sent by a third party telemarketer. *Id.* at 873. Holding the marketing consultant could still be liable despite outsourcing the text messages, the Ninth Circuit analogized to a prior case in which it held a consultant potentially liable for messages sent by a third party to whom it had outsourced its client's marketing campaign. *Id.* at 879 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009)). The Ninth Circuit reasoned it would make little sense, as a matter of policy, to impose liability on a merchant "for a campaign he entrusts to an advertising professional, unless that professional is equally accountable for any resulting TCPA violation." *Id.* at 878–79. Similarly here, BHA calls itself a consultant and provides a host of services to the Car Dealerships, including services related to telemarketing. But the similarities with *Gomez* end there. Most importantly, the offending calls here were not made by third-party telemarketers on BHA's behalf: Plaintiffs allege they are former customers of the Car Dealerships and the dealerships themselves placed the offending calls to Plaintiffs to promote vehicles in their own inventory. (Compl. ¶¶ 36, 42–44, 53, 57–59.)

In short, Plaintiffs' evidence fails to substantiate their theory that in placing the offending calls to Plaintiffs, the Car Dealerships acted under BHA's actual authority.

**B.** **Apparent Authority**

A principal may be liable in circumstances where a purported agent acts with apparent authority, even if the agent lacks actual authority. *Dish Network*, 28 FCC Rcd. at 6586. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has

authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement § 2.03. The Restatement suggests that the analysis should not take place in a vacuum and that the third party's observations, and the context in which they are made, are key. *See id.* cmt. d. For example, courts have held a third party's actual knowledge that an agent in fact lacks authority to bind the principal defeats the reasonableness of believing the agent to be authorized. *See, e.g.*, *A-J Marine, Inc. v. Corfu Contractors, Inc.*, 810 F. Supp. 2d 168, 181 (D.D.C. 2011) ("In other words, the third party must actually (and reasonably) believe the agent is authorized . . . .").

Here, Plaintiffs point to public statements that might lead a reasonable person to believe the Car Dealerships act with BHA's authority, notwithstanding that they lack actual authority from BHA. For example, the website for "Berkshire Hathaway Automotive" states that it "operates" the many dealerships it owns and that its management is "responsible for selecting, coaching, developing and retaining" employees and driving dealerships' sales and services performance. (Resp. Ex. A, Natalia Lyons Declaration ("Lyons Dec."), Ex. 2.) That these statements are attributed to "Berkshire Hathaway Automotive," and it is unclear whether this name refers to BHAI or BHA or the automotive group generally, only underscores it might be reasonable for a third party to be confused by the group's corporate structure and misapprehend the allocation of actual authority.

However, Plaintiffs do not produce any competent evidence that they or any other call recipient actually observed these public statements by "Berkshire Hathaway Automotive," or any other manifestations of BHA's apparent authority over the Car Dealerships. This is puzzling because Plaintiffs allege in their SAC, and reiterate in their Response to BHA's Motion to Dismiss, that they (or their spouse) contacted, or were contacted by, BHA. (*E.g.*, SAC ¶¶ 48–49, 62.) For example, Plaintiffs allege that

> Plaintiff Wolski's wife contacted Camelback Kia, BHA, and Berkshire Hathaway Automotive, Inc. by phone, email, and online demanding that the calls cease. . . . Eventually, Plaintiff Wolski's wife received a call from a manager of BHA who apologized for the continued calls and acknowledged that the calls should not have been made because of Plaintiff Wolski's multiple do-not-call requests.

(SAC ¶¶ 48–49.) Such allegations, if substantiated, would appear to support Plaintiffs' apparent authority theory. Yet Plaintiffs offer no affidavit or other competent evidence to substantiate them. By contrast, BHA has produced a declaration by Mr. Faye averring BHA has never contacted Plaintiffs and neither Plaintiff has ever contacted BHA. (Third Faye Decl. ¶ 25.) Allegations in the SAC and representations by Plaintiffs' counsel in the Response are insufficient under the test applicable to BHA's factual attack. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." (citation omitted)). Thus, Plaintiffs fail to create a genuine factual dispute as to whether a third party held a reasonable belief the Car Dealerships were authorized to act on BHA's behalf based on BHA's manifestations. This is fatal to Plaintiffs' apparent authority theory.

**C. Ratification**

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement § 4.01. A principal may ratify another's act by accepting a benefit of the act with actual knowledge of the material facts or with awareness "that it does not know the material facts and ratif[ies] anyway. *Henderson*, 918 F.3d at 1073–75. Ratification may create an agency relationship between an actor and a principal where none existed before. *Id*. However, the actor must have "acted or purported to act as an agent on the person's behalf." Restatement § 4.03. "Therefore, when an actor is not an agent and does not purport to be one, the doctrine of ratification does not apply." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (citation and quotation marks omitted).

Here, Plaintiffs contend BHA "remained silent and continued to accept the benefits of the Dealerships' tortious conduct despite knowing what the callers were doing or, at the very least, knowing of facts that would have led a reasonable person to investigate further." (Resp. at 16–17 (quoting *Henderson*, 918 F.3d at 1075)) (alterations omitted). However, Plaintiffs do not proffer evidence that in placing the offending calls, the Car Dealerships

acted, or purported to act, as agents on BHA's behalf. This is fatal to their ratification theory. *See Kristensen*, 879 F.3d at 1014–15. Even if Plaintiffs could overcome this hurdle, they have not proffered evidence showing that BHA actually knew the Car Dealerships were placing calls on their behalf in violation of the TCPA, or that BHA "had knowledge of facts that would have led a reasonable person to investigate" whether such violations of the TCPA were occurring. *See id*. As noted, Plaintiffs' evidence shows BHA was involved in, and facilitated, the Car Dealerships' telemarketing. Further, Plaintiffs allege in the SAC that such telemarketing included unlawful calls. (*E.g.*, ¶¶ 42–49, 58–65.) However, Plaintiffs do not offer competent evidence establishing that any unlawful calls took place under BHA's watch or on its behalf, nor evidence of any other "red flags" that should have alerted BHA to investigate potential violations of the TCPA. *See Kristensen*, 879 F.3d at 1015. Thus, Plaintiffs cannot succeed on a ratification theory based on the evidence they have proffered.

## IV.   CONCLUSION

Having reviewed the evidence produced by both parties with the aid of jurisdictional discovery, the Court finds Plaintiffs have failed to create a material factual dispute as to whether BHA is vicariously liable under the TCPA for the unlawful phone calls allegedly made by the Car Dealerships to Plaintiffs, their former customers. Plaintiffs therefore have not met their burden to produce evidence establishing their standing to assert a TCPA claim against BHA, depriving this Court of subject-matter jurisdiction over the same.

**IT IS THEREFORE ORDERED** granting Defendant BHA's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 55) as to the claim asserted against it. The claim against Defendant BHA is dismissed for lack of jurisdiction. Plaintiffs' claim against Defendants Chvt Motors, LLC and Showcase Motors, LLC will proceed. The Court will set a telephonic scheduling conference by separate Order.

Dated this 29th day of March, 2023.

Honorable John J. Tuchi
United States District Judge